**In re DN ASSOCIATES d/b/a Atlantic Motor Inn, Debtor/Appellee.**

**CASCO NORTHERN BANK, N.A., Appellant,**

v.

**DN ASSOCIATES d/b/a Atlantic Motor Inn, Debtor/Appellee.**

Civ. No. 92–0219–B.

United States District Court, D. Maine.

March 10, 1993.

order awarding fees and expenses to counsel and other professionals employed by debtor DN Associates ("Debtor" or "DN"). After hearing and a review of the memoranda, the Court finds no abuse of discretion in the bankruptcy court's fee and expense determinations. Accordingly, Casco's appeal is *DE-NIED*.[1]

## I. BACKGROUND

DN, a limited partnership, filed a voluntary Chapter 11 petition on April 19, 1991. DN was represented throughout the Chapter 11 proceedings by James D. Poliquin, Esq. of the law firm Norman, Hanson & DeTroy ("Debtor's Counsel").

Debtor filed its first proposed reorganization plan on August 19, 1991, the last day of the 120 day exclusivity period. Casco objected to the plan and moved to appoint a trustee or, alternatively to cut off exclusivity. At a September 5, 1991 hearing, Casco represented that it would shortly thereafter file a plan providing for 100% payment to unsecured creditors. On September 13, 1991, the bankruptcy court terminated exclusivity so that the competing plans could be considered together.

On October 5, 1991, DN filed its first amended plan. Casco ultimately filed its plan on November 25, 1991. Despite Casco's 100 percent payment plan, DN continued to press its own proposal. DN's plan was thereafter repeatedly revised in response to rulings and developments regarding its classification scheme, the value of debtor's assets, and the limited partners' ability to retain their interests by making capital contributions to the reorganized entity. DN was promoting its fourth amended plan and organizing a fifth when the bankruptcy court confirmed Casco's amended plan on April 17, 1992.

Debtor's counsel filed an amended final fee application on or about May 19, 1992. This final fee application sought approval of $62,-

## ORDER AND MEMORANDUM
## OF DECISION

BRODY, District Judge.

Casco Northern Bank ("Casco") appeals the United States Bankruptcy Court's final

---

1. Also before the Court is Appellees Joseph V. O'Donnell and the Pilot Group's Motion to Dismiss the appeal for improper service. Other than noting the service requirements set forth by

Bankruptcy Rule 8008(b), the Court will not address the Motion to Dismiss in view of the Court's order on the merits of the appeal.

898.65 in attorney's fees and expenses incurred from September 3, 1991 to April 17, 1992. The final fee application followed the bankruptcy court's earlier award, subject to final court approval, of slightly more than $35,000 in requested fees. Casco had objected to the earlier award and it also objected to the Debtor's final fee application. Casco seeks disgorgement of the fees already paid and disallowance of the fees and expenses requested in the final fee application.

By Order and separate Memorandum of Decision dated August 20, 1992, the bankruptcy court overruled Casco's objection and awarded fees in the full requested amount to Debtor's counsel and the other professionals. 144 B.R. 195. Casco filed timely notice of appeal on August 25, 1992.

## II.  STANDARD OF REVIEW

Appeal from a bankruptcy court is governed by Bankruptcy Rule 8013. Rule 8013 provides:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

■ Bankruptcy courts are traditionally granted broad discretion in determining reasonable fee awards. *In re Casco Bay Lines, Inc.,* 25 B.R. 747, 753 (Bankr. 1st Cir.1982). Review of the court's fee determination is limited to abuse of discretion or error of law. *In re Spillane,* 884 F.2d 642, 646 (1st Cir. 1989).

## III.  DISCUSSION

Section 1107(a) of the Bankruptcy Code grants a debtor-in-possession the same rights as a trustee. As such, the debtor-in-possession "may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a).

■ Services provided by the debtor-in-possession's counsel are compensable from estate assets. 11 U.S.C. § 330(a)(1). Section 330(a)(1) grants the court power to award to the debtor's attorney "reasonable compensation for actual, necessary services rendered by such ... attorney ... based on the nature, the extent, and the value of such services, the time spent on such services and the cost of comparable services other than in a case under this title [title 11]...." The court retains the power to deny compensation for services and reimbursement of expenses of a professional person employed under § 327 if "at any time ... such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." 11 U.S.C. § 328(c). "A debtor-in-possession's attorney cannot be compensated for representing the interest of the debtor or the debtor's directors, officers and/or shareholders in a manner which is adverse to, or does not benefit, the estate or the creditors." *In re Office Products of Am., Inc.,* 136 B.R. 983, 989 (Bankr.W.D.Tex. 1992). Accordingly, the bankruptcy court must view counsel's actions with an eye toward whether counsel has ceased to be disinterested or has represented interests adverse to the estate. *See In re Kendavis Industries Int'l, Inc.,* 91 B.R. 742, 748 (Bankr.N.D.Tex. 1988).

■ Casco's appeal asserts that fee allowances should be denied because debtor's counsel represented interests adverse to the estate and because the services performed by debtor's counsel were not "actual, necessary services" under § 330(a) and did not benefit the estate. In support of its position, Casco maintains that the bankruptcy court misapplied the law and that the case therefore merits *de novo* review. We disagree. The bankruptcy court's fee and expense determinations represent factual determinations made in accordance with established law. As the bankruptcy court was in the best position to make these determinations, they will not be overturned absent an abuse of discretion. No such abuse exists here.

The bankruptcy court's August 20, 1992 Memorandum of Decision details the court's reasons for allowing full payment of the requested fees and expenses. In holding that debtor's counsel did not represent interests adverse to the estate, the court made numerous factual findings.

[D]ifferences in the competing plans can be found principally in DN's objectives to retain control of its assets, to keep existing management and, with infusions of new capital, to maintain the interests of limited partners. However, DN's plan sought to achieve none of these results by denying creditors their due. DN proposed that unsecured creditors be paid in full shortly after confirmation; that Casco retain its collateral and be paid its secured claim; and that administrative claims be fully paid.

Mem. of Decision 144 B.R. at 199–200.

The court discussed the difficulties facing DN's plan but noted that DN's plan did not harm creditors. "Although there were substantial hurdles to confirmation of DN's plan, in none of its multiple incarnations did it aim to benefit insiders and equity at *the expense* of the creditor body. DN's course was consistent with its fiduciary duties to all of the estate's constituencies." *Id.* (Emphasis in original.)

In rejecting Casco's portrayal of DN's activities as adverse to the estate, the bankruptcy court summarized its perspective on the case before it.

DN's reorganization efforts were attempts to harmonize the interests of all the estate's constituent elements, including creditors and interest holders. Such attempts are consistent with the debtor's fiduciary obligations, which extend to the entire community of interests affected by reorganization, including investors. It would be unfortunate if courts, looking only at plan provisions removed from context, concluded as a matter of law that a conflict of interest existed whenever a debtor and its counsel, in the face of creditor opposition, pursued a reorganization strategy that, while providing for creditors in a fashion consistent with Chapter 11 priorities, sought to adjust the rights and relations of parties-in-interest so that the interests of equity interest holders could be preserved.

*Id.* at 200.

This Court agrees. The bankruptcy court was in the proper position to evaluate the facts of the case and make determinations regarding the nature of DN's activities. Weighing the situation before it, the bankruptcy court found DN's efforts appropriate. This Court finds no abuse of discretion in the bankruptcy court's determinations.

Casco affixes great importance to the bankruptcy court's alleged oversight or mistaken approach to the question of whether DN's activities benefitted the estate. No such mistake or oversight occurred. After a complete discussion of DN's activities in the context of interests adverse to the estate, the court addressed the "benefit of the estate" question by referring back to the previous discussion. *Id.* at 203. It is clear that the bankruptcy court found that the same facts which indicated that DN's actions were not adverse to the estate also indicated that they benefitted the estate. There was no need for the bankruptcy court to repeat its previous discussion with regard to both issues.

Casco mischaracterizes the bankruptcy court's decision in its discussion of benefit to the estate. "[T]his court applied a radically different—and unprecedented—precept: that the debtor-in-possession owes, even when the concern is hopelessly insolvent, an equal duty to 'all of the estate's constituent elements, including creditors and interest holders.'" (Br. of Appellant at 15.) The bankruptcy court made no such finding of an equal duty. It merely viewed the entire proceeding in perspective and, then, determined that DN's actions proved beneficial to the estate.

In addition to the findings made with regard to interests adverse to the estate, the bankruptcy court specifically found that while DN's ability to satisfy § 1129(a)'s requirements was not certain, it was never foreclosed. Mem. of Decision 144 B.R. at 203. As stated in *In re Office Products:*

This section [1129(a)] spells out the minimums for a plan that represents a legitimate effort at reorganization, that oper-

ates in the best interests of the estate and its creditors. If it does not, then we are right to ask whether any benefit has been conferred on the estate in pursuing the plan in the first place, *if* it is clear from the context of the case that the debtor and its counsel knew or should have known from the outset that the plan could *not* satisfy the requisites of § 1129(a).

136 B.R. at 990. (Emphasis in original.) Accordingly, the bankruptcy court's factual determination that DN was never foreclosed from satisfying the requirements of § 1129(a) is significant. Casco's effort to turn this factual determination into legal error is unpersuasive.

The bankruptcy court found that "DN's persistent push for its plan spurred Casco and the Kennys to file and press forward their own plan, ultimately resulting in a confirmed plan that paid trade creditors in full.... Though ultimately unsuccessful, DN's attorney's efforts to present a cram down plan by arguing that it, rather than the Casco/Kenny plan, should prevail under a § 1129(a) 'competing plans' analysis were part of a constructive effort aimed to obtain a confirmed plan for this debtor." Mem. of Decision 144 B.R. at 203. The court continued by finding DN's efforts "neither quixotic nor unreasonably battlesome." *Id.* at 204. Finally, the bankruptcy court found that "DN's counsel contributed constructively to the resolution of this case by representing the debtor zealously, but always in reasonable, competent and ethical fashion." *Id.*

Despite Casco's arguments, this Court finds no credible evidence that errors of law were made by the bankruptcy court. The bankruptcy court made appropriate factual determinations and applied them consistent with applicable law. The Court finds no abuse of discretion. As the bankruptcy court was in the best position to make these determinations, this Court hereby *DENIES* Casco's appeal from the bankruptcy court's August 20, 1992 Order.

*SO ORDERED.*